## STATEMENT OF FACTS

Your affiant, ▮▮▮▮▮▮▮▮, is a Special Agent assigned to the Tampa Field Office of the Federal Bureau of Investigation ("FBI"). In my duties as a Special Agent, I have received training and gained experience in a variety of criminal laws and procedures, including those involving drug distribution, counterintelligence, and domestic terrorism. Through my training, education and experience, I have become familiar with the manner in which criminal activity is carried out, and the efforts of persons involved in such activity to avoid detection by law enforcement. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

### *Background*

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *Facts Specific to Marcus Clint Martin*

MARCUS CLINT MARTIN (hereinafter "MARTIN") is a 32-year-old American citizen. As discussed in detail below, MARTIN appears to have traveled to Washington, D.C., from Florida and participated in the riot at the U.S. Capitol on January 6, 2021.

**A. Identification of MARTIN**

On June 3, 2021, a confidential human source ("CHS") reported to the FBI that the CHS had identified MARTIN, also known as #BlueGooniesGuy on Twitter. MARTIN was identified by the CHS in multiple open-source social media videos of the events on January 6, 2021. In the videos MARTIN is seen in multiple confrontations with law enforcement officers in front of the U.S. Capitol Building near the inauguration stands. The CHS also identified MARTIN on Slide 126 of the Metropolitan Police Department's ("MPD") Be-On-the-Look-Out ("BOLO") slides which depicted persons of interest for unrest related offenses from January 6, 2021. The photo from the BOLO (Exhibit 1) shows MARTIN atop of the scaffolding erected for the inauguration of President Joseph Biden. The CHS also identified a publicly available mugshot of MARTIN from an arrest in Calhoun County, Florida.



Exhibit 1: MPD BOLO picture taken from the MPD website and provided by the CHS.

As of July 2022, Florida DMV records identified Marcus Clint MARTIN as having a residential address in Melbourne, Florida. As of February 15, 2023, MARTIN had three registered vehicles: a 2003 Land Rover, 2003 BMW Mini Cooper, and a 2003 Jaguar. Individual 1 is also listed as an owner on the same vehicles as MARTIN. DMV records indicate that MARTIN and Individual 1 previously resided together in Melbourne, Florida.  However, in June 2023, MARTIN updated his address to a residential address in Blountstown, Florida.  Florida DMV records also show that MARTIN's parent resides at the same address in Blountstown, Florida.

A search of FBI databases returned a cellular telephone number for MARTIN of (xxx) xxx-9520 (the "phone number ending in -9520"). According to records obtained through a search warrant served on Verizon, on January 6, 2021, in and around the time of the incident, the cellphone associated with the phone number ending in -9520 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior and exterior of the U.S. Capitol building.

As of July 2, 2021, subsequent to legal process the FBI served on Verizon, subscriber and toll record information for records associated with the phone number ending in -9520 from January 1, 2021 to January 10, 2021 listed Individual 1 as the subscriber for the telephone number. It also listed the Melbourne, Florida address where MARTIN previously resided with Individual 1 as the subscriber address. The phone number was active 18 times on January 6, 2021 from 12:18 a.m. to 11:43 p.m. Three other phone numbers were associated with this account.

FBI analysis of telephone toll records for the phone number ending in -9520 showed a business that was a frequent contact of MARTIN at an address in Melbourne, Florida 32904 . Upon surveillance of the business, MARTIN's 2003 Land Rover was located at the business.

In August 2021, an owner of the business, Witness 1, who had known MARTIN for approximately three years, was able to identify MARTIN from a still image taken from a video depicting MARTIN at the Capitol Building on January 6, 2021 (Exhibit 4). Witness 1 identified MARTIN as an employee at the business and mentioned MARTIN taking a few days off at the beginning of 2021. Witness 1 did not know at the time what MARTIN did during those days. Witness 1 noted that the photo looked like it was from January 6, 2021.

3



Exhibit 2: Photo shown to Witness 1

I have reviewed multiple open-source videos and identified the individual in them as MARTIN through Witness 1's identification, the person's clothing (described below), and comparison of the individual in the open-source videos to photographs available through DMV records checks. Among other things, I observed the following.

A social media video captured by the FBI depicts MARTIN walking towards the U.S. Capitol building, turning back towards the camera, and removing a facemask and black and white stocking cap. The subject is wearing a dark blue jacket, neon yellow gloves, dark cargo pants, and work boots. In another video, MARTIN is removing metal barricades in front of the U.S. Capitol building near the inauguration stands after chasing police from their initial positions in front of the U.S. Capitol building. MARTIN then partakes in chants reciting "Who's house?! Our house" while beating on his chest (Exhibit 3).



Exhibit 3: Left photo - MARTIN just before removing facemask; Center photo - MARTIN removing metal barricades; Right photo - MARTIN chanting

In another video, taken from police cameras, MARTIN can be seen in the crowd from a police stand. MARTIN appears to be yelling and chanting in this video while pointing at officers filming the crowd (Exhibit 4).



Exhibit 4: MARTIN seen in crowd from a police camera

**B. MARTIN's Attacks on Police Officers on January 6, 2021**

According to two open-source videos, sometime after 1:00 p.m. on the West front of the U.S. Capitol, MARTIN appears to be applying first aid to another rioter who was injured and bleeding from the face (Exhibit 5). MARTIN can be seen applying bandages and a powder substance to the injured man's face. When an officer attempts to render aid to the injured individual, MARTIN prevents the officer from attempting to assist the injured rioter and begins to fight the officers present in the area, including by shoving one unidentified USCP officer ("Officer

1") away from the injured rioter (Exhibit 6) and using his shoulder to push away another unidentified officer ("Officer 2").



| Exhibit 5: MARTIN administering first aid | Exhibit 6: MARTIN shoving unidentified USCP Officer 1 away from injured rioter | Exhibit 7: MARTIN later shoving unidentified USCP Officer |

These open-source videos show that MARTIN pushes against the officers for approximately 10 seconds before he can be seen being pepper sprayed by the officers (Exhibit 8). MARTIN pulls back from the line of officers and helps another rioter, identified as Landon Copeland,[1] to his feet (Exhibit 9). A U.S. Capitol Police ("USCP") Officer 3 (later identified as Officer T.R.) is pushed over by the crowd and MARTIN piles on Officer 3 after the officer was knocked over. MARTIN also uses his left shoulder to shove other unidentified USCP officers attempting to assist Officer 3. (Exhibit 7) The fight lasts approximately 40 seconds before the crowd is pushed back.

---

[1] Landon Copeland has pleaded guilty in the District of Columbia to assaulting, resisting, or impeding officers in connection with his own actions on January 6, 2021 and was recently sentenced. *See United States v. Landon Copeland*, No. 21-cr-0570-APM (D.D.C).

 

Exhibit 8: MARTIN being pepper sprayed

Exhibit 9: MARTIN and Landon Copeland fighting USCP officers

In another open source video, after MARTIN was aiding the injured rioter, MARTIN is seen from another angle getting into the pile on top of Officer 3 (Exhibit 10). MARTIN recovers to his feet and tries to push another unidentified USCP officer ("Officer 4") with a shield (Exhibit 11). MARTIN is seen grabbing USCP Officer 4 in riot gear with both hands and shoving the officer. MARTIN is then shoved back by Officer 4 and pepper sprayed by an unknown officer.



Exhibit 10: MARTIN going into the pile with Officer 3.

Exhibit 11: MARTIN grabbing unidentified Officer 4.

In another social media video, MARTIN can be seen grabbing a bottle of water with his left hand and taking a drink. MARTIN is squinting and appears to not be able to open his right eye (Exhibit 12).



Exhibit 12

I conducted interviews with four USCP Officers that I identified who remembered seeing the subject in the crowd administering first aid. Of those four, two of these officers stated that the DMV picture of MARTIN matched the subject in the crowd and both officers believed him to be the same person. The other two officers either could not confirm or were not asked to match the subject to the DMV photo.

Officer T.R. was one of the two officers who affirmatively identified MARTIN as the man in the crowd. Officer T.R. identified himself as Officer 3, who was at the bottom of a pile of rioters that MARTIN was involved with. Officer T.R. did not remember MARTIN directly attacking him but recalled him throwing multiple punches at another unknown officer in the crowd. Officer T.R. sustained injuries—an injured knee—from this pile-on and interaction with rioters. The other three officers could not recall the subject providing first aid being involved in fights with officers.

I have also located MPD camera footage from January 6, 2021, in which MARTIN appears to engage in a separate attack on law enforcement on the West front of the U.S. Capitol. In body camera footage obtained from the MPD, MARTIN is captured on video at approximately 1:17 PM in front of a police line of MPD and USCP officers. Officers are using metal barricades to separate and push the crowd back from the Capitol building. MARTIN is seen chanting and holding up an unknown object at the front of the police line. At approximately 1:19 p.m., MARTIN is seen yelling at USCP and MPD officers who are located behind the metal barricades. MARTIN can be seen and heard yelling "Why don't you take that knee then?! Why ain't you takin that knee for us?" At approximately 1:21 p.m., MARTIN attempts to grab and remove the metal barricades (Exhibit 13). An MPD officer pushes MARTIN away (Exhibit 14) and MARTIN again attempts to grab the barricade (Exhibit 15). The MPD officer uses pepper spray and attempts to grab MARTIN (Exhibit 16). MARTIN breaks free from the officer and retreats into the crowd.



Exhibit 13: MARTIN grabbing the metal barricade.



Exhibit 14: MARTIN shoving off the MPD officer.



Exhibit 15: MARTIN attempting to grab the barricade a second time.



Exhibit 16: MARTIN being grabbed by the officer a second time.

Based on the foregoing, your affiant submits there is probable cause to believe that MARTIN violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function

9

means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Specifically, MARTIN committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, officers from the United States Capitol Police, lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

MARTIN also committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, officers from the Metropolitian Police Department, lawfully engaged in the lawful performance of their official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

Your affiant further submits there is probable cause to believe that MARTIN violated 18 U.S.C. § 111(a)(1), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with an officer of the United States while engaged in or on account of the performance of official duties.

Specifically, MARTIN did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, unidentified Officer 1, an officer from the United States Capitol Police, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim or the intent to commit another felony.

MARTIN did further forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, unidentified Officer 2, an officer from the United States Capitol Police, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim or the intent to commit another felony.

MARTIN did further forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, Officer T.R., an officer from the United States Capitol Police, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim or the intent to commit another felony.

MARTIN did further forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), that is, unidentified Officer 4, an officer from the United States Capitol Police, while such person was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve physical contact with the victim or the intent to commit another felony.

Finally, your affiant submits that there is probable cause to believe that MARTIN violated 18 U.S.C. § 1752(a)(1), (2), and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.



Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 27th day of July 2023.

HON. ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE